IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

HARI P. KUNAMNENI,           )
                             )
    Plaintiff,               )
                             )
        v.                   )     1:09cv005 (JCC)
                             )     1:09cv450 (JCC)
GARY LOCKE, SECRETARY,       )     (Consolidated)
U.S. DEPT. OF COMMERCE,      )
                             )
    Defendant.               )


**M E M O R A N D U M   O P I N I O N**

        This matter comes before the Court on Cross-Motions for
Summary Judgment filed by Defendant Gary Locke, the Secretary of
Commerce ("Defendant" or the "Government") and Plaintiff Hari P.
Kunamneni ("Plaintiff" or "Kunamneni").  Also before the Court is
Defendant's Motion to Dismiss Plaintiff's breach of contract
claim pursuant to Federal Rule of Civil Procedure 12(b)(1) for
lack of subject matter jurisdiction.  For the following reasons,
the Court will grant Defendant's Motion for Summary Judgment,
deny Plaintiff's Motion for Summary Judgment, and grant
Defendant's Motion to Dismiss.

# I. Background

## A. Factual Background

### 1. Allegations in the Complaint

The allegations in the Complaint are as follows. Plaintiff, who represents himself in this matter[1], is a citizen of the United States, who was formerly employed by the United States Patent and Trademark Office ("USPTO" or "agency") as a patent examiner and was terminated on September 26, 2007. (Compl. ¶¶ 3, 22, 37.) Plaintiff claims that he was diagnosed with CAD-unstable angina on November 26, 2004 (Compl. ¶ 8). According to Plaintiff's physician's statement obtained in August 2007, Plaintiff's physical impairment affects major life activities such as walking, standing, concentrating, working, lifting and thinking. (Compl. ¶ 11., Ex. 4.) In the physician's statement, his physician recommends that Plaintiff work four hours in the morning and four hours in the afternoon with one three-hour break between the shifts. (Compl. ¶ 13, Ex. 5.)

Plaintiff alleges that USPTO discriminated against him by failing to provide reasonable accommodations for the following alleged disability: coronary artery disease and heart arrhythmia. (Compl. ¶¶ 31-34.) He also alleges that his termination for requesting reasonable accommodations and requesting a transfer

---

[1] Plaintiff indicated during the December 11, 2009 hearing that he is a law school graduate but has not be admitted to any bar.

out of his unit based on his communication problems with his supervisor constituted unlawful retaliation. (Compl. ¶ 36.)

Though unclear, the Complaint appears to contain the following causes of action: (1) discrimination in violation of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 790, *et seq.*, by failing to provide Plaintiff reasonable accommodations for his disability (Compl. ¶¶ 31-34); (2) retaliation for engaging in protected activities in violation of the Rehabilitation Act and/or Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Compl. ¶ 36); and (3) a breach of employment contract by USPTO. (Compl. ¶ 37.)[2]

Plaintiff seeks the following relief: (1) full restoration of employment as a patent examiner; (2) back pay and benefits from September 27, 2007; (3) $39,200 for pain and suffering; (4) $36,000 for emotional distress; (5) any and all costs of all legal proceedings including attorney's fees; and (6) all other relief as the Court deems appropriate. (Compl. ¶ 41.)

 2. Undisputed Facts

---

[2] Although the Complaint asserts the Americans with Disabilities Act ("ADA") as one of the federal statutes under which Plaintiff brings his claims, the Court will only consider Plaintiff's claims brought under the Rehabilitation Act and Title VII. The ADA excludes the federal government from its coverage. 42 U.S.C. § 12111(5)(B)(i). Because the standards used to determine whether an employer has discriminated under the Rehabilitation Act or the ADA are essentially the same, this does not affect the substantive merit of Plaintiff's claims.

<u>a. Plaintiff's Hiring and Employment Training</u>

The undisputed facts are as follows.  On or about August 25, 2006, Plaintiff was offered a position of a patent examiner by USPTO with the effective appointment date of September 18, 2006.  (Gov't's Ex. to Mem. in Supp. of Mot. to Dismiss and Mot. for Summ. J. ("GEX") 16, at 496-497.)  The offer letter states that "[a]s an Excepted Service employee, [Plaintiff] will be required to complete a two-year probationary period" before being converted into "a competitive permanent appointment."  (GEX 16, at 496.)  The letter also states that USPTO "will provide reasonable accommodations to applicants with special needs" and provides a phone number to call.  (GEX 16, at 497.)  From September 2006 until May 2007, Plaintiff attended a mandatory basic patent examination training at the USPTO Patent Training Academy ("Training Academy").  (GEX 3, at 33.)  Plaintiff's supervisor at the Training Academy was Frantz Jules ("Jules"), a Supervisory Patent Examiner.  (GEX 3, at 33-34.)  Also during his training, Plaintiff attended the agency's OCR classes on reasonable accommodations.  (GEX 7, at 115; GEX 8, at 219-223.)

<u>b. November 2006 Request for a Flexible Schedule</u>

Plaintiff alleges that some time in November 2006, he asked Jules if he could have a flexible work schedule under which he would work seven days a week, six hours a day due to his

heart condition.  (GEX 7, at 130-31.)  Jules advised Plaintiff to provide a doctor's note and to talk to the Training Academy's manager regarding his request.  (GEX 7, at 136-37.)  Plaintiff did not provide a doctor's note to Jules and did not discuss his request with the Training Academy's manager in charge because he hoped to go on a flexible schedule that was available to the patent examiners following the training period.  (GEX 7, at 131-32, 135, 137.)

### c. April 2007 Request for a Standing Desk

After the completion of his training, Plaintiff was transferred to the Technology Center in May 2007 to begin working as a probationary patent examiner.  (GEX 1, at 2.)  On April 18, 2007, before his transfer to the Technology Center, Plaintiff sent an e-mail to the agency's office manager requesting a standing desk in his new office at the Technology Center.  (GEX 12, at 469-70.)  In response, the move coordinator advised that all examiners are given the same suite of furniture and asked Plaintiff to contact the Office of Civil Rights ("OCR") for any requests for special furniture.  (GEX 12, at 469.)  Rejecting this option, Plaintiff instead posted a request to the "Commissioner's Corner" website in which he requested that the agency-wide policy be instituted so that any employee requesting a standing desk can get one without being referred to OCR.  (GEX 12, at 468.)  He also cc'd the move coordinator to this request.

(GEX 12, at 468.)

On April 14, 2007, upon learning of Plaintiff's request, Greg Vidovich ("Vidovich"), Class Manager at the Training Academy, forwarded Plaintiff's request posted on the Commissioner's Corner to the Assistant Director of OCR as well as other supervisors to alert them that Plaintiff may seek a reasonable accommodation in the future. (GEX 12, at 468.) Also on the same date, Plaintiff contacted OCR regarding a reasonable accommodation package (GEX 2, at 29.) In response, OCR's Senior Equal Employment Opportunity ("EEO") Specialist Michael Salley ("Salley") sent Plaintiff a reasonable accommodation package including a physician's statement to complete. (GEX 2, at 29; GEX 15, at 491-92.) Plaintiff, however, decided not to complete the reasonable accommodation package for a standing desk, which he sought to burn "as many calories as possible," because he thought it was unduly burdensome. (GEX 1, at 6; GEX 7, at 118.)

### d. May 2007 Request for a Flexible Schedule

Following the completion of his training and before starting his new post as a probationary patent examiner, Plaintiff alleges that he spoke with Salley in person and requested a flexible work schedule on May 9, 2007. (GEX 1, at 4.) During this meeting, Plaintiff showed Salley medical records including but not limited to Coronary Angiogram Report and

Discharge Summary from India dated November 2004.  (GEX 1, at 5;
GEX 13, at 481-85.)  These records indicated that Plaintiff was
diagnosed with "CAD-Unstable angina, Good LV function" but that
Plaintiff was "stable" and "asymptomatic" at the time of
discharge.  (GEX 13, at 482.)  In response to Plaintiff's
request, Salley told Plaintiff that "he was unable to understand
the medical records given to him and a physician's statement will
be required" in accordance with the standard USPTO OCR policy.
(GEX 1, at 5; GEX 15, at 491-92.)  Plaintiff did not submit the
reasonable accommodation package because he decided to request a
flexible work schedule from a new supervisor, Glenton Burgess
("Burgess") at the Technology Center, which would obviate the
need to submit the necessary paperwork for a reasonable
accommodation.  (GEX 1, at 13; GEX 2, at 29-30; GEX 7, at 138,
143.)  Plaintiff also admits that he did not inform Burgess that
the reason he was requesting a flexible schedule was based on his
health condition.  (GEX 7, at 143.)

e. August 2007 Request for a Reasonable Accommodation

On July 10, 2007, Salley informed Plaintiff via e-mail
that OCR closed Plaintiff's April 24, 2007 request for a
reasonable accommodation because Plaintiff has "not submitted the
necessary documentation" and thus has "failed to interact with
OCR to determine [his] accommodation needs."  (Compl. 35.)
Further, Salley informed Plaintiff that OCR will reopen his

request for a reasonable accommodation "if, and when, [OCR] receive[s] the needed documentation." (Compl. 35.) Plaintiff responded to Salley's e-mail on the same day stating that he was scheduled to see a cardiologist on July 11, 2009 to determine his condition and that he will contact OCR if "it is determined that [he needs] a flexible schedule." (Compl. 35.) Following the July 10, 2007 e-mail correspondence, Plaintiff did not submit a physician's statement until August 16, 2007. (GEX 13, at 472.) In fact, Plaintiff never saw a cardiologist for any condition and was not treated for a heart condition between November 2004 and July 2007. (GEX 7, at 141-42, 146.)

For Plaintiff's reasonable accommodation request, OCR received his employee statement on August 10, 2007 (GEX 5, at 57), his physician's statement on August 16, 2007 (GEX 5, at 58), and the supervisory statement on August 24, 2007 (GEX 5, at 57.) The OCR's policy document, "Procedures for Providing Reasonable Accommodation for Individuals with Disabilities", provides that the office is to provide a determination regarding a reasonable accommodation request *within 45 business days of receiving all necessary documentation* absent extenuating circumstances. (GEX 15, at 493) (emphasis added). Before OCR could adjudicate Plaintiff's reasonable accommodation request, Plaintiff's supervisor Burgess requested Plaintiff's termination based on, among other things, his poor work performance and low work

production on August, 23, 2007. (GEX 19, at 511.) Thus, OCR informed Plaintiff that his August 2007 reasonable accommodation request was denied as moot. (GEX 14, at 486.)

B. Procedural Background

In November 11, 2008, Plaintiff, *pro se*, filed an employment discrimination suit against then Secretary of Commerce Carlos M. Gutierrez[3] in the Northern District of California. *See* No. 1:09cv450, Compl. [dkt. 1.] On March 23, 2009, Plaintiff filed an amended complaint asserting claims for breach of contract and violations of the Rehabilitation Act and Title VII arising out of his previous employment with USPTO. *See id.*, Am. Compl. [dkt. 20.] Upon Defendant's motion to change venue, this case was transferred to the Eastern District of Virginia as No. 1:09cv450 on April 28, 2009. *Id.* [dkt. 35.]

Meanwhile, Plaintiff filed a substantially identical complaint ("Complaint") covering the same causes of action based on the same set of facts in the Eastern District of Virginia on January 5, 2009. *See* No. 1:09cv005, Compl. [dkt. 1.] Thus, this Court consolidated the cases filed under Nos. 1:09cv450 and 1:09cv005 into one case under No. 1:09cv005 on May 1, 2009. *See id.* [Dkt. 40.]

---

[3] The Secretary of Commerce, the proper Defendant in this case, is now Gary Locke. *See* Fed. R. Civ. P. 25(d).

On July 10, 2009, Defendant moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56 and moved to dismiss Plaintiff's breach of contract claim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction along with the requisite *Roseboro* notice.  After granting two motions for extension of time filed by Plaintiff, the Court ordered Plaintiff to file his opposition to Defendant's summary judgment motion by September 7, 2009.  In violation of the Court's September 7, 2009 Order and this court's local rules regarding the page limits, Plaintiff filed a lengthy opposition to Defendant's motion as well as his separate "Response to Defendant's Statement of Undisputed Facts" on September 14, 2009. Defendant filed his reply to Plaintiff's opposition on September 16, 2009.

On November 17, 2009, Plaintiff moved for summary judgment.  Defendant filed his opposition on November 23, 2009. Plaintiff filed his reply on December 2, 2009.  The hearing on parties' Cross-Motions for Summary Judgment was held on December 11, 2009.  Defendant's Motion for Summary Judgment, Defendant's Motion to Dismiss and Plaintiff's Motion for Summary Judgment are before the Court.

## II. Standard of Review

A.  Summary Judgment

Summary judgment is appropriate only if the record

shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). The party seeking summary judgment has the initial burden of showing the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party opposing summary judgment may not rest upon mere allegations or denials and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quotation omitted). A mere scintilla of evidence is insufficient to overcome summary judgment. *Id.* at 248-52. In reviewing the record on summary judgment, the court "must draw any inferences in the light most favorable to the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

When faced with cross-motions for summary judgment, the standard is the same as that applied to individual motions for summary judgment. The court must consider each party's motion "separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). If the court finds that there is a genuine issue of material fact, both motions must be denied. 10A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2720. However, "if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." *Id.*

In addition, complaints filed by *pro se* plaintiffs are construed more liberally than those drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Khozam v. LSAA, Inc.*, 2007 WL 2932817 at *3 (W.D.N.C. 2007). While a court is not expected to develop tangential claims from scant assertions in a complaint, if a *pro se* complaint contains potentially cognizable claims, a plaintiff should be allowed to particularize these claims. *Treadwell v. Murphy*, 878 F. Supp. 49, 51-52 (E.D. Va. 1995) (citing *Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir. 1985); *Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir. 1965)).

B.  Motion to Dismiss under Rule 12(b)(1)

The district court may dismiss a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when the jurisdictional allegations are "clearly . . . immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682 (1946).  The district court's grant of a motion to dismiss under Rule 12(b)(1) is reviewed de novo by the appellate court.  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

### III. Analysis

Plaintiff appears to bring the following three claims against Defendant.  First, he alleges that Defendant committed disability discrimination when USPTO allegedly failed to provide Plaintiff requested reasonable accommodations for his disability (Compl. ¶¶ 31-34.)  Second, he alleges that the agency retaliated against him by terminating him for engaging in protected activities such as requesting reasonable accommodations and seeking a transfer out of his unit. (Compl. ¶¶ 31-33, 36.)  Third, he alleges that USPTO violated the employment contract it had with Plaintiff.  (Compl. ¶ 37.)  The Court will address Defendant's Motion for Summary Judgment regarding the first two claims, Defendant's Motion to Dismiss the breach of contact claim, and Plaintiff's Motion for Summary Judgment in turn.

A.  Defendant's Motion for Summary Judgment

    1. Plaintiff's Evidentiary Objections

        Before the Court addresses Defendant's Motion for Summary Judgment, it will first address Plaintiff's evidentiary objections raised in his opposition to Defendant's Motion for Summary Judgment and Motion to Dismiss.

        First, Plaintiff states that "initial scan" of the transcripts attached to Defendant's summary judgment motion indicate that they are not accurate.  (Pl.'s Opp. 3.)  Plaintiff ,however, failed to identify what part of the transcripts included as the Government's exhibits are inaccurate.  Rather, Plaintiff states that he will provide the corrections to the transcripts at issue "at a later time, due to lack of time." (Pl.'s Opp. 3.)  The Court refuses to question the accuracy of the transcripts that have been duly certified by a stenographer (GEX 7, at 178; GEX 8, at 340; GEX 9 at 372; GEX 10 at 443; GEX 11 at 467) when Plaintiff failed to identify for the Court specific inaccuracies contained within the transcripts during the two months the Court afforded him to oppose the Government's Motion for Summary Judgment.

        Second, Plaintiff objects to Government's summary judgment motion Exhibit 18 (GEX 18, at 504-510) on the basis that it was part of settlement negotiations.  (Pl.'s Opp. 3.) Government's Exhibit 18 consists of notes that Burgess has taken

regarding Plaintiff's lack of progress, unwillingness to receive feedback, and low productivity as a patent examiner during July and August 2007. (GEX 18, at 504-510.) The Court finds that these notes could not have been part of any settlement negotiations because they were created before a complaint was ever filed regarding Plaintiff's claims.

Third, Plaintiff objects to Government's summary judgment motion Exhibits 17 through 20, which he identifies as the documents created after April 24, 2007. (Pl.'s Opp. 4.) Plaintiff objects to these Exhibits because they are "hearsay" and were created "in anticipation of litigation." (Pl.'s Opp. 4.) The Court rejects Plaintiff's hearsay argument as it does not see how all documents created after April 24, 2007 could constitute an out-of-court statement that is "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Further, Plaintiff's argument regarding these Exhibits being created in anticipation of litigation is likewise without merit. Plaintiff provided no evidence that the parties anticipated litigation between April 24, 2007 and the time of Plaintiff's termination other than an e-mail in which Vidovich informed an OCR employee that Plaintiff's request for a standing desk may come up on his radar. (Pl.'s Opp. 4.; Compl. 20.) Based on its review of the document, the Court notes that this e-mail does not suggest that USPTO started to anticipate litigation

as of April 24, 2007.

Lastly, Plaintiff objects to Government's summary judgment motion Exhibit 15 as incomplete and requests that "all statements made in the summary judgment motion" to be excepted from the Court's review because it is missing a page. (Pl.'s Opp. 4.) Defendant responded to this argument by attaching a copy of the complete Exhibit 15 to his reply memorandum. (Def.'s Reply Ex. 7.) Given that this insignificant clerical error harmed neither parties nor the Court, the Court will consider Government's Exhibit 15 to be properly before it.

For the foregoing reasons, the Court rejects all of Plaintiff's evidentiary objections raised in his opposition to Defendant's Motion for Summary Judgment and Motion to Dismiss.

2. Plaintiff's Discrimination Claim based on USPTO's Failure to Accommodate

Plaintiff alleges that USPTO violated the Rehabilitation Act by failing to reasonably accommodate Plaintiff by: (1) denying Plaintiff's request for a flexible work schedule in November 2006 (Compl. ¶ 31(a)); (2) denying Plaintiff's request for a standing desk in April 2007 (Compl. ¶¶ 31(b)(I)-(iii)); (3) denying Plaintiff's request for a flexible work schedule in May 2007 (Compl. ¶¶ 31(c)-(d)); and (4) denying Plaintiff's request for a reasonable accommodation in August 2007. (Compl. ¶ 31(h).)

To survive a summary judgment motion under the Rehabilitation Act, Plaintiff must raise an inference of discrimination through the two-step "pretext" framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) when there is no direct evidence of disability discrimination. *See, e.g.*, *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 267 (4th Cir. 2001). The Court does not see any direct evidence of discrimination based on Plaintiff's disability in the record before it. Thus, the Court will apply to this case the familiar *McDonnell Douglas* framework of burden shifting. *See Ennis v. Nat'l Assoc. of Bus. and Educ. Radio, Inc.*, 53 F.3d 55, 57 (4th Cir. 1995).

Under *McDonnell Douglas* framework, Plaintiff must first first establish a prima facie case of disability discrimination. *Id.* at 58. If Plaintiff successfully establishes his prima facie case, then the burden shifts to the employer to articulate a legitimate and non-discriminatory reason for the adverse employment action. *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). The employer's burden is one of production rather than of persuasion. *Id.* If the employer produces sufficient evidence to support a nondiscriminatory explanation for the employment decision, Plaintiff must then "prove by a

preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Thus, Plaintiff bears both the ultimate burden of persuasion and the initial burden of establishing, by a preponderance of the evidence, a prima facie case of unlawful discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993); *Holland*, 487 F.3d at 214. The Court notes that this burden-shifting analysis also applies to retaliation claims under Title VII. *Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006) (en banc).

   a. Prima Facie Case

   Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

   To establish a prima facie case for failure to accommodate under the Rehabilitation Act, Plaintiff must prove: (1) he is an individual with a disability within the meaning of

the ADA[4]; (2) the employer had notice of his disability; (3) with reasonable accommodations, he could perform the essential functions of the position; and (4) the employer refused to make such accommodations. *Rhoads v. FDIC*, 257 F.3d 373, 387 n. 11 (4th Cir. 2001); *see Edmonson v. Potter*, 118 F.Appx. 726, 728 (4th Cir. 2004) (unpublished).

Further, to establish a prima facie case for discrimination based on disability under the Rehabilitation Act, Plaintiff must prove that: (1) he is an individual with a disability within the meaning of the ADA; (2) is otherwise qualified for the job in question; and (3) suffered an adverse employment action solely because of the disability. *Edmonson*, 118 F.Appx at 728 (internal citation omitted).

In his Motion for Summary Judgment, Defendant essentially attacks the third element of the "failure to accommodate" claim and the second element of the "discrimination" claim. (Mem. in Supp. of Def.'s Mot. to Dismiss and for Summ. J. ("Def.'s SJ Mem.") 20.) Defendant argues that Plaintiff cannot establish a prima facie case for either a discrimination or a failure to accommodate claim under the Rehabilitation Act because Plaintiff is not an "otherwise qualified individual with a

---

[4]It is well settled in the Fourth Circuit the ADA and the Rehabilitation Act generally are construed to impose the same requirements, and "[b]ecause the language of the two statutes is substantially the same," the district court should "apply the same analysis to both." *Doe v. University of Maryland Medical System Corp.*, 50 F.3d 1261, 1265 n. 9 (4th Cir. 1995).

disability" and that Plaintiff cannot perform the "essential functions" of his position.  (Def.'s SJ Mem. 20.)

A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  Thus, the Court will first analyze whether there is a genuine issue of material fact as to whether Plaintiff can perform essential functions of being a patent examiner and if not, whether a reasonable accommodation would have enabled him to perform such essential functions.

"Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires."  29 C.F.R. § 1630.2(n)(1).  Evidence of whether a particular function is essential includes, among other things: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; and (3) the current work experience of incumbents in similar jobs.  29 C.F.R. § 1630.2(n)(3).  Defendant argues, and the Court agrees, that a genuine issue of material fact does not exist as to whether Plaintiff can perform the essential functions of a patent examiner.

The employer in this case specifically stated, and it

is not disputed, that the primary responsibility of a patent examiner is to "examin[e] active U.S. patent applications" and complete these cases as efficiently as possible. (GEX 16, at 496; GEX 7, at 160-61.) The evidence shows that Jules, Plaintiff's supervisor at the Training Academy, considered that "production [was] everything" and that one cannot work at USPTO if one was not productive. (GEX 7, at 160-61.)

The record is replete with undisputed facts showing that Plaintiff has received poor ratings regarding his work performance and productivity throughout his career at USPTO. (GEX 8, at 245-46, 283; GEX 17, at 499-500; GEX 18, at 504-510.) Jules was Plaintiff's supervisor during his basic training from September 2006 through May 2007. (GEX 3, at 34-35.) Jules found, at about the 4-month mark in the training program, that Plaintiff regularly challenged the training and disagreed with the things that Jules was teaching because Plaintiff thought "this job" was "impossible." (GEX 3, at 34.) Jules stated in his affidavit that Plaintiff's quality of examination and work level was "far below that of others in the training class". (GEX 3, at 36.) For example, Plaintiff's quality of work was "below average" and his average work output level was only in the "30% range" as compared to his colleagues who was performing at "80%." (GEX 3, at 36.) Jules found this to be "much lower than [the output level he has] ever encountered in training students"

21

previously.  (GEX 3, at 36.)

Moreover, Plaintiff's evaluation forms demonstrate consistently that Plaintiff needed to improve his productivity level and quality of his work product.  For example, in the employee evaluation form for "Month 4th" and "Month 6th," the comments state that Plaintiff "was not progressing as expected," "failed to consistently accept instructions and accurately incorporate feedback," and "his production fell short of the [] goal set forth initially."  (GEX 17, at 499.)  The evaluation also indicates that Plaintiff has only reviewed a total of six applications out of 360 examining hours by "Month 6th" and such "lack of sufficient work product is a clear indication that [Plaintiff] is not progressing."  (GEX 17, at 499.)

Plaintiff's 2007 Mid-Year Review shows that he only completed a total of ten applications out of 488 examining hours since December 10, 2006.  (GEX 17, at 500.)  The Government contends that it should generally take four to six hours to review one application.  (Def.'s SJ Mem. 13.)  The mid-year review also states that Plaintiff was not progressing as expected, made improper rejection of the claims, and needs to improve quality in the area of checking claims for informalities. (GEX 17, at 500.)  It states that Plaintiff needs to make "substantial improvements in the areas of quality and level of work product."  (GEX 17, at 500.)

Plaintiff's direct supervisor at the Technology Center was Burgess and his reviewing supervisor was Paul Sewell ("Sewell"). (GEX 1, at 2.) According to Burgess's deposition, Plaintiff's level of performance at the Technology Center was poor, plaintiff's productivity was very low, and there was little improvement over time. (GEX 4, 43-45.) For example, Plaintiff has consistently received "1" assessment marks, which is the lowest score indicating need for improvement, for "analyzing disclosure and claims for compliance" with patent laws, "ability to accept instructions and respond to feedback," and "productivity consistency" in his Employee Evaluations completed by his supervisors. (GEX 17, at 502-03.) Additionally, when Burgess gave Plaintiff instructions, Plaintiff "did not incorporate feedback with respect to the performance of the instructions." (GEX 4, at 44.) Burgess states that he has informed Plaintiff multiple times that his performance was below par. (GEX 9, at 369; GEX 17, at 502-03.)

In response, Plaintiff states he was progressing adequately during his training by obtaining 80 to 90% on the quizzes and completing ten applications over the course of six months, which he considers "substantial." (Pl.'s Opp. 26-29.) Plaintiff claims additionally that he has obtained a successful rating during his March 2, 2007 evaluation. (Compl. Ex. 10.) Further, he notes that he always had a smile on his face, was

always polite to his supervisors, and that he has never shown "loss of control or argumentativeness." (Pl.'s Opp. 28-29.)

Though Plaintiff tediously disputes many facts that are presented in Defendant's summary judgment motion, he failed to prove that there exists some *material* facts in dispute. *See Anderson,* 477 U.S. at 247-48 (noting that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.") The record before the Court overwhelmingly shows that Plaintiff's work productivity was dismal and his progress was inadequate during his time at USPTO. Plaintiff's heavy reliance upon his own statements and nothing else is fatal because Plaintiff's own testimony regarding his work performance cannot establish a genuine issue as to whether he was meeting the employer's legitimate expectations. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (citing *Evans*, 80 F.3d at 960-61 ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff."))

Additionally, Plaintiff's claim that he received a satisfactory rating in March 2007, six months before his termination, does not demonstrate that his job performance was satisfactory *at the time of discharge*. *See Diamond v. Bea Maurer, Inc*., 2005 WL 943631, 4 (4th Cir. 2005) (unpublished) (internal citations omitted) (emphasis added). Rather, the

record is replete with evidence indicating otherwise.  Beginning
in early July 2007, Burgess met with Plaintiff multiple times to
discuss the "specific expectations of consistency" because
Plaintiff was not meeting the "expectations [set] for an
[e]xaminer with his tenure."  (GEX 19, at 512; GEX 4, at 44.)
Notwithstanding these meetings to help boost Plaintiff's
performance, Plaintiff's work remained "below expectation."
(Compl. 52; GEX 4, at 44.)  Thus, Sewell and Burgess finally
ended up providing Plaintiff with two full pay periods, until
August 18, 2007, to improve his productivity, as a last measure.
(GEX 7, at 104-05; GEX 9, at 369-70).  During this meeting with
Sewell and Burgess, Plaintiff was informed that if he improved,
there "w[ould] be no termination."  (GEX 7, at 105.)

By August 18, 2007, Plaintiff had only completed one
case over the four weeks allocated to him (GEX 7, at 37) and
Sewell and Burgess ultimately determined that Plaintiff was
unable to fulfill his duties as a patent examiner.  (GEX 9, at
356, 367, 369-70.)  On August 23, 2007, Burgess made a formal
request through Sewell to Stacy Hoffman ("Hoffman"), Employee
Relations Specialist, to terminate Plaintiff from his job based
on his inadequate performance and slow progress.  (GEX 19, at
512.)  On September 27, 2007, Plaintiff's termination was made
effective.  (GEX 20, at 513.)  Based on the foregoing facts, even
drawing all inferences in the light most favorable to Plaintiff,

the Court finds that the record taken as a whole could not lead a reasonable trier of fact to find that Plaintiff was meeting his supervisors' expectations at the time of his termination.

Defendant next argues that he is entitled to summary judgment because Plaintiff failed to engage in the interactive process by not submitting the requisite documentation to the agency when requested. (Def.'s SJ Mem. 3.) Defendant submits that such failure is fatal to Plaintiff's attempt to establish a prima facie case. (Def.'s SJ Mem. 23-27.)

The Fourth Circuit in an unpublished opinion held that "implicit" in the fourth element of the failure to accommodate claim is the "requirement that the employer and employee [together] engage in an interactive process to identify a reasonable accommodation." *Haneke v. Mid-Atlantic Capital Management*, 131 Fed. Appx. 399, 400 (4th Cir. 2005) (citing 29 C.F.R. § 1630.2(o)(3)); *see also*, 29 C.F.R. § 1630 ("[T]he employer must make a reasonable effort to determine the appropriate accommodation. The appropriate accommodation is best determined through a flexible, *interactive process* that involves both the employer and the [employee] with a disability.") (emphasis added). In analyzing the failure to accommodate claim, the Court looks for evidence of party's "failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific

accommodations are necessary" by focusing on the signs of bad
faith such as failure to respond to interactive discussions.
*Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th
Cir. 1996).  Thus, an employer should not be liable if it made
"reasonable efforts both to communicate with the employee."  *Id.*
at 1137.

Defendant submits, and the Court agrees, that the
record clearly indicates that Plaintiff repeatedly failed to meet
his burden of "engaging in the interactive process in good faith"
and this failure "caused [the agency's] failure to accommodate."
*Haneke*, 131 Fed. Appx. at 400.  For example, Plaintiff admitted
that he never followed up with Jules regarding Plaintiff's
flexible schedule request allegedly made in November 2006 and he
never discussed his request with the Training Academy's Class
Manager as instructed by Jules.  (GEX 7, at 130-32, 135-37.)
With respect to his request for a standing desk in April 2007,
Plaintiff also admitted that he decided not to fill out the
reasonable accommodation package provided to him by OCR, which
included a physician's statement form, because he found it unduly
burdensome.  (GEX 2, at 29; GEX 5 at 59.)  Lastly, during the May
9, 2009 meeting with Salley, Salley told Plaintiff that Plaintiff
needed to submit a physician's statement to be considered for a
reasonable accommodation in accordance with OCR's policy because
Salley was unable to understand the medical records from India.

(GEX 1, at 5; GEX 15 at 491-492.)  Plaintiff admits that he did
not submit the required paperwork and opted instead to request a
flexible work schedule to his new supervisor at the Technology
Center.  (GEX 1, at 13; GEX 2, at 29-30; GEX 7, at 138, 143.)
Based on these facts, the Court finds that Plaintiff, not USPTO,
has failed to engage in the interactive process and caused the
breakdown in the chain of communication to pursue reasonable
accommodations.

Thus, the Court finds that Plaintiff failed to
establish that he is a qualified individual who "with or without
reasonable accommodation, can perform the essential functions of
the employment position," 42 U.S.C. § 12111(8), and failed to
establish that his employer failed to reasonably accommodate for
his disability by not participating in the interactive process.

### b. Rebuttal of Defendant's Reason as Pretextual

Even if Plaintiff could make out a prima facie case of
discrimination, which he did not, the Court finds that Defendant
has come forward with a legitimate and non-discriminatory reason
for terminating Plaintiff--Plaintiff's poor work performance.
(Def.'s SJ Mem. 27.); see supra Part III.A.2.  Plaintiff's
continuing history of unacceptable performance is well documented
by his supervisors and covers a long span of time.  (GEX 17, 19,
20.)

The Court notes that Plaintiff provides no evidence

from which a jury could surmise that Defendant's reason for
terminating him was pretextual other than his own speculations
regarding suspicious timing of Defendant's actions and irrelevant
statistical data regarding alleged disparate impact.  (Pl.'s Opp.
6-7; Pl.'s Mem. in Supp. of Summ. J. Exs. 3-4.)  The record is
clear that there is nothing suspicious about the timing of
Plaintiff's termination.  Burgess stated that he became aware of
Plaintiff's reasonable accommodation request in  August 2007 when
Plaintiff and OCR contacted him for a supervisor's statement for
Plaintiff, well after Burgess had spoken to Plaintiff in July
2007 regarding his last chance to improve productivity and
performance to avoid termination.  (Compl. Ex. 24; GEX 4, at 40-
41.)  Burgess stated that he even told OCR that if Plaintiff "met
the criteria for having a flexible work schedule," then he would
not object to it.  (GEX 4, at 46.)  Additionally, Plaintiff
admits that he has never specifically told either Burgess or
Sewell that his performance at work was being affected by his
health problems.  (GEX 7, at 86-87, 104-05.)

It is apparent that Plaintiff's version of the events,
built entirely on his own inferences and rebutted by the
extensive evidence gathered by Defendant, is one that no
reasonable jury could accept.  *See Goldberg v. B. Green and Co.,
Inc.,* 836 F.2d 845, 849 (4th Cir. 1988) (holding that summary

judgment cannot be avoided simply by refuting the employer's reasons for removal); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of" a summary judgment motion.")

Based on the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment on Plaintiff's discrimination claim based on USPTO's alleged failure to accommodate.

### 3. Plaintiff's Retaliation Claim

Defendant alleges that Plaintiff cannot make out a claim for retaliation because he cannot show that he engaged in a protected activity. (Def.'s SJ Mem. 28-29.) To state a prima facie case of retaliation, Plaintiff must show: (1) that he engaged in a protected activity; (2) that Defendants took an adverse employment action against him; and (3) that there was a causal link between the two events. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). A causal connection exists "where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Id.* at 213. It is well settled that protected activities fall into either participation or opposition categories. *Laughlin v. Metro. Wash.*

*Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Thus, "[a]n employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Id.* at 259.

Plaintiff alleges that he was terminated because (1) he filed an administrative grievance seeking a transfer on August 11, 2007 based on his communication problems with Burgess, and (2) he placed comments on a "Commissioner's Corner" e-mail website regarding the standing desk. (Compl. ¶¶ 11, 52-53.) However, nothing in the administrative grievance and the e-mail to a Commissioner's Corner concerns USPTO's illegal practice regarding Plaintiff's disability. For example, on August 11, 2007, Plaintiff wrote a letter to Burgess requesting to be transferred out of his current art unit due to "communication problems" with his supervisor. (Def.'s SJ Mem. 28-29.) Plaintiff stated that he was "told not to respond" to the supervisor and received the "constant threat" of "possibility of termination by the supervisor." (Def.'s SJ Mem. 29.) Even viewed in the light most favorable to Plaintiff, Plaintiff's letter does not suggest disability discrimination or unlawful practice committed by USPTO. Likewise, Plaintiff's e-mail to the Commissioner's Corner website does not suggest that Plaintiff was

opposing any discriminatory or unlawful practice of USPTO. He simply demanded that an "agency wide policy be instituted" so that any employee could receive a standing desk "for physical fitness and other health reasons." (GEX 12, at 468.) Thus, the Court finds that Plaintiff has failed to allege that he has engaged in a  protected activity, thus failed to establish his prima facie case for retaliation.

Even if the Court were to assume that Plaintiff established his retaliation claim, which he did not, the undisputed evidence shows that Plaintiff was terminated for a legitimate reason based on his poor work performance, not for engaging in the above allegedly protected activities. The Court is convinced that, based on the evidence before it, no reasonable jury could find that Defendant retaliated against Plaintiff for requesting a transfer or posting a comment regarding a standing desk. The Court will grant Defendant's Summary Judgment Motion on Plaintiff's retaliation claim.

B.  Defendant's Motion to Dismiss

Plaintiff claims that USPTO violated the Recruitment Incentive Service Agreement because "USPTO has terminated [him] based on alleged poor performance." (Compl. ¶ 37, Ex. 32.) Based on Plaintiff's request seeking "all back pay and benefits from September 27, 2007", the Court assumes that Plaintiff seeks a "Recruitment Incentive" valued at $39,600 based on the terms of

the Recruitment Incentive Service Agreement. (Compl. ¶¶ 41(b), Ex. 32.) Defendant argues that the Court should dismiss Plaintiff's breach of contract claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because a contract action in excess of $10,000 should be entertained by the Court of Federal Claims and not this Court under the Tucker Act, 28 U.S.C. § 1491(a)(1) ("Tucker Act"). (Def.'s SJ Mem. 29-30.)

In response, Plaintiff submits that he does not seek $39,600 which is the entire bonus figure made up of four separate payment of $9,900 every year. (Mem. in Opp. to Def.'s Mot. to Dismiss and Summ. J. ("Pl.'s Opp.") 1.) Rather, Plaintiff states that he seeks only "for [the] second year bonus amounting to $9,900" because he was already paid for the first year and the prospect of getting paid bonus for the third and fourth year is "speculative" because he may not be converted to [a] permanent position." (Pl.'s Opp. 1.) Thus, Plaintiff states that this Court should exercise subject matter jurisdiction over his breach of contract claim. (Pl.'s Opp. 31.)

It is well settled that the Court of Federal Claims has exclusive jurisdiction over any claim against the United States for money damages exceeding $10,000 that is founded upon any express or implied contract with the United States under the Tucker Act. *E. Enters. v. Apfel,* 524 U.S. 498, 520 (1998).

Accordingly, the Court agrees with Defendant that it does not have subject matter jurisdiction over Plaintiff's breach of contract claim as pleaded in the Complaint. The Court also finds Plaintiff's attempt to save his breach of contract by limiting the damage to $9,900 unavailing in light of the fact that he has not mentioned this figure anywhere in the Complaint nor does this $9,900 figure appear on the Recruitment Incentive Agreement. Even if this Court were to exercise subject matter jurisdiction, Plaintiff's claim is without merit because Plaintiff's second year bonus of $9,900 would also be as speculative as Plaintiff's third and fourth year bonus. Plaintiff bases his argument for the speculative nature of his third and fourth year bonus on the USPTO hiring letter that states only "[u]pon successful completion of [the] two-year probationary period", he will be converted to a permanent employee. (Pl.'s Opp. 31.) This argument clearly also applies to his second year bonus as it is undisputed that Plaintiff was terminated from USPTO without completing the two-year probationary period. For these reasons, the Court will grant Defendant's Motion to Dismiss Plaintiff's breach of contract claim.

C.  Plaintiff's Motion for Summary Judgment

        At the outset, the Court notes that Plaintiff's Motion for Summary Judgment is almost identical to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Motion

to Dismiss.  Additionally, it appears that Plaintiff is moving for summary judgment only as to his "failure to accommodate" claim against Defendant.  (Pl.'s Mem. in Supp. of Summ. J. ("Pl.'s SJ Mem.") 1-2.)  Thus, the Court will treat Plaintiff's Motion as a Cross-Motion for Summary Judgment.

To survive Plaintiff's motion for summary judgment, Defendant will have to show that there exists a genuine issue of material fact for "a reasonable jury could return a verdict for" him.  *Anderson*, 477 U.S. at 248.  In making this determination, the evidence of Defendant, the non-moving party, is viewed in the light most favorable to him.  *Halperin v. Abacus Technology Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

As explained above, the Court holds that Plaintiff in this case has failed to establish his prima facie case for both discrimination and retaliation claims.  Thus, Plaintiff cannot carry his burden for his own summary judgment motion which requires him to prove that no reasonable jury could find a lack of discriminatory intent.  (Def.'s Opp. 2.)  Instead, Defendant has presented sufficient evidence for a reasonable to return a verdict for him and Plaintiff's summary judgment motion accordingly will be denied.

D.  Plaintiff's Request for Supplemental Discovery

In Plaintiff's memorandum in opposition to Defendant's Motion for Summary Judgment and Motion to Dismiss, Plaintiff asks

for "supplemental discovery" for all claims except for the breach of contract claim without specifying why he needs further discovery and what he hopes to discover from such discovery. (Pl.'s Opp. 2.)

The Court is aware that, as a general rule, summary judgment is appropriate only after "adequate time for discovery," *Celotex*, 477 U.S. at 322; *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 719 (4th Cir. 1991), *cert. denied*, 502 U.S. 1095 (1992), and "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson*, 477 U.S. at 250 n.5. Pursuant to Federal Rule of Civil Procedure 56(f), should it appear from the affidavits of a party opposing a summary judgment motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the Court may refuse the application for judgment, order a continuance, or make any such order as is just. Fed. R. Civ. P. 56(f).

The party opposing summary judgment bears the burden of showing what specific facts it hopes to discover that will raise an issue of material fact. *See Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995). "[V]ague assertions" that more discovery is needed are insufficient. *Id.* Courts generally place great weight on a Rule 56(f) affidavit, believing that "[a] party may

not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." *Evans*, 80 F.3d at 961 (quoting *Nguyen*, 44 F.3d at 242); *see also Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 972 n.3 (4th Cir. 1990) (stating that plaintiffs genuinely concerned that summary judgment was premature because of inadequate time for discovery should have sought relief under Rule 56(f)).

In the instant case, Plaintiff has not supported his Rule 56(f) request for supplemental discovery with an affidavit identifying what specific facts he hopes to discover, which might lead to an issue of material fact. Further, the information Plaintiff seeks to discover, for example, (1) "entry and exit records of all patent examiner's [sic] in the lab" (Pl.'s Opp. 11); (2) his request for policies regarding reasonable accommodation (Pl.'s Opp. 25); and (3) Sewell's statement regarding "he does not want to get involved in the termination process" (Pl.'s Opp. 9) is neither material to the agency's basis for termination nor relevant to Plaintiff's prima facie case. It is also abundantly clear from the procedural history of this case that Plaintiff has had adequate time to conduct extensive discovery regarding the claims for which he himself moved for summary judgment. (Def.'s Reply 18-19.) For the foregoing

reasons, the Court will deny Plaintiff's request for supplemental discovery.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment, grant Defendant's Motion to Dismiss, and deny Plaintiff's Motion for Summary Judgment.

An appropriate Order will issue.


December 29, 2009                    _____/s/_____
Alexandria, Virginia                    James C. Cacheris
                             UNITED STATES DISTRICT COURT JUDGE